# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **Jose Rodriguez Mendoza, et al.,** | **Case No. 4:25cv2183** |
| **Petitioners,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Kevin Raycraft, Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement, et al.,** | **MEMORANDUM OPINION & ORDER** |
| **Respondents.** | |

On October 13, 2025, Petitioners Jose Rodriguez Mendoza ("Mendoza") and Guillermo Acevedo Diaz ("Diaz") (hereinafter referred to collectively as "Petitioners") filed a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus ("Petition"), in which they assert that they are presently being unlawfully detained by U.S. Immigration and Customs Enforcement ("ICE") without bond pursuant to 8 U.S.C. § 1225(b)(2)(A).  (Doc. No. 1.)  Pursuant to an expedited briefing Order issued by this Court, Respondents Kevin Raycraft, Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States (hereinafter referred to collectively as "Respondents") filed a Motion to Dismiss on October 28, 2025.  (Doc. No. 12.)  Petitioners filed a Response on November 4, 2025.  (Doc. No. 15.)

For the following reasons, Respondents' Motion to Dismiss (Doc. No. 12) is granted as follows.  Respondents Lyons, Noem, and Bondi are hereby dismissed.  The Petition (Doc. No. 1) is dismissed without prejudice.

## I.  Background[1]

### A.  Factual Allegations

#### 1.  Petitioner Jose Rodriguez Mendoza

Mendoza is a native and citizen of Honduras.  (Doc. No. 1 at ¶¶ 2, 20.)  He entered the United States on August 18, 2023 near Eagle Pass, Texas.  (*Id*.)  *See also* Doc. No. 2-4 at PageID# 68. Mendoza was detained by U.S. Customs and Border Protection on August 19, 2023.  (Doc. No. 1 at ¶ 28; Doc. No. 2-1 at PageID# 29.)  On that same date, DHS released Mendoza on his own recognizance pursuant to 8 U.S.C. § 1226(a).  (*Id*.)  *See also* Doc. No. 2-1 at PageID# 29 (DHS Form 1-286 titled "Notice of Custody Determination").  DHS also issued a Form I-862 Notice to Appear which charged Mendoza with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i),[2] i.e., as an alien present in the United States without being admitted or paroled.  (Doc. No. 2-4 at PageID# 68.) Mendoza was placed in removal proceedings pursuant to 8 U.S.C. § 1229a and ordered to appear before an Immigration Judge ("IJ") in Cleveland on October 17, 2024.  (Doc. No. 1 at ¶ 29; Doc. No. 2-4 at PageID# 68.)

On July 10, 2024, Mendoza filed an application for asylum.  (Doc. No. 1 at ¶ 30.)  *See also* Doc. No. 2-6 at PageID#s 81-92. Therein, Mendoza indicates that he has been married since September 2022 and has twin sons (Jose David and Jose Anthony) who were born in July 2014.  (Doc. No. 2-6 at PageID# 82-83.)  Mendoza seeks asylum on the grounds that he is fearful of being deported

---

[1] In setting forth the factual background, the Court relies on the factual allegations in the Petition and its Exhibits.  (Doc. Nos. 1, 2, 3, 4.)

[2] Section 1182(a)(6)(A)(i) provides that:  "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

to Honduras because of "a lengthy and escalating pattern of specific threats to kidnap and sell his twin sons that persisted despite attempts by the family to relocate within Honduras."  (Doc. No. 1 at ¶ 30.)  *See also* Doc. No. 2-6 at PageID# 85, 92.  As of the date of the instant Petition, Mendoza's asylum application remained pending before the Cleveland Immigration Court.  (Doc. No. 1 at ¶ 30.)

In March 2025, Mendoza obtained valid employment authorization from the United States Government.  (*Id*. at ¶ 31.)  Several months later, on August 6, 2025, Mendoza was detained by ICE during a workplace raid.  (*Id*. at ¶ 32.)  He requested a bond hearing before an IJ.  (*Id*. at ¶ 33.)  On September 25, 2025, the IJ denied Mendoza's request for bond on the basis of lack of jurisdiction. (Doc. No. 2-3 at PageID# 65.)  Specifically, Mendoza alleges that the IJ determined that the immigration court lacked jurisdiction to conduct a bond hearing because Mendoza was an "applicant for admission" and, therefore, subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).[3] (Doc. No. 1 at ¶ 34.)

On October 7, 2025, Mendoza (through counsel) appealed the IJ's denial of bond to the Board of Immigration Appeals ("BIA").  (Doc. No. 2-7.)  In his Notice of Appeal, Mendoza set forth the following grounds for his appeal:

> The IJ erred as a matter of fact and law in finding that he did not have jurisdiction over [Mendoza's] bond request where: (1) *Matter of Hurtado*[4] is not retroactive under the Sixth Circuit's test for retroactivity in agency adjudications, (2) [Mendoza] was not an applicant for admission but an applicant for asylum, and a grant of asylum is not an "admission" to the United States, (3) in any case, [Mendoza's] "applicant for admission" status was not administratively final because [Mendoza] had not admitted

---

[3] As discussed in greater detail *infra*, there are two statutes which principally govern detention of aliens pending removal proceedings -- 8 U.S.C. §§ 1225 and 1226.  The first – Section 1225 – is a mandatory detention provision, while the second statutory provision – Section 1226 – sets forth a discretionary detention framework.

[4] In *Matter of Hurtado*, 29 I&N 216, 2025 WL 2674169 (BIA 2025), the BIA held (in a precedential decision) that "[b]ased on the plain language of section 235(b)(2)(A) of the Immigration & Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."

3

> or conceded any additional charges, (4) DHS is barred by collateral estoppel from asserting that [Mendoza] was detained pursuant to Section 235(b) when it had previously explicitly released him under Section 236(a), (5) the Attorney General's designation of *Matter of Akhmedov* as precedent supersedes the decision in *Hurtado* by the three-member panel of the Board, (6) *Hurtado* is distinguishable on its facts because it involved person who was granted TPS, which then expired, causing him to revert to applicant for admission status, and there was no information that *Hurtado* had ever applied for asylum.
>
> The IJ further erred in failing to grant [Mendoza's] alternative requests for relief, viz. setting the case for a *Matter of Joseph* hearing so that DHS could present its arguments as to why [Mendoza] was subject to mandatory detention and make alternative findings of fact as to danger and flight risk.

(*Id*. at PageID# 95.)  In an Attachment to his Notice of Appeal, Mendoza argues that his appeal should be reviewed by a three-board member panel for a number of reasons, including because of the need to (1) "resolve a complex, novel, unusual, or recurring issue of law or fact;" (2) "settle inconsistencies among the rulings of different immigration judges;" and (3) "establish a precedent construing the meaning of laws, regulations, or procedures."  (*Id.* at PageID# 98.)  Lastly, Mendoza requests that the BIA issue an expedited briefing order because he is "detained and separated from his wife and children after having committed no criminal offense."  (*Id*. at PageID# 99.)

Mendoza's bond appeal remains pending as of the date of this Order.  Mendoza has remained in detention at the Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio since he was detained on August 6, 2025.  (Doc. No. 1 at ¶¶ 32, 35.)

### 2.    Petitioner Guillermo Acevedo Diaz

Diaz is a native and citizen of Colombia.  (Doc. No. 1 at ¶¶ 3, 21.)  He entered the United States on December 29, 2023 near Eagle Pass, Texas.  (*Id*. at ¶ 3, 37; Doc. No. 3-4 at PageID# 154.) Diaz was detained by U.S. Customs and Border Protection on December 31, 2023.  (Doc. No. 1 at ¶ 39; Doc. No. 3-1 at PageID# 104.)  On that same date, DHS released Diaz on his own recognizance

4

pursuant to 8 U.S.C. § 1226(a).  (*Id*.)  *See also* Doc. No. 3-1 at PageID# 104 (DHS Form 1-286 titled "Notice of Custody Determination").  DHS also issued a Form I-862 Notice to Appear which charged Diaz with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), i.e., as an alien present in the United States without being admitted or paroled.  (Doc. No. 3-4 at PageID# 154.)  Diaz was placed in removal proceedings pursuant to 8 U.S.C. § 1229a and ordered to appear before an IJ in Cleveland on June 18, 2025.  (Doc. No. 1 at ¶ 40; Doc. No. 3-4 at PageID# 154.)

On July 16, 2025, Diaz filed an application for asylum.  (Doc. No. 1 at ¶ 41.)  *See also* Doc. No. 4-1.  Therein, Diaz indicates (among other things) that he took police training classes in Cartagena, Colombia from February 2022 to February 2023.  (Doc. No. 4-1 at PageID# 163.)  He seeks asylum on the grounds that he is fearful of being deported to Colombia because of "threats from paramilitary groups who stalk and threaten police trainees."  (Doc. No. 1 at ¶ 41.)  *See also* Doc. No. 4-1 at PageID#s 164-165.  As of the date of the instant Petition, Diaz's asylum application remained pending before the Cleveland Immigration Court.  (Doc. No. 1 at ¶ 41.)

On August 13, 2025, Diaz was detained by ICE while leaving Immigration Court after appearing for a scheduled hearing.  (*Id.* at ¶ 43.)  He thereafter requested a bond hearing before an IJ.  (*Id*. at ¶ 44.)  On September 25, 2025, the IJ denied Diaz's request for bond on the basis of lack of jurisdiction.  (Doc. No. 3-3 at PageID# 151.)  Like Mendoza, Diaz alleges that the IJ determined that there was no jurisdiction to conduct a bond hearing because Diaz was an "applicant for admission" and, therefore, subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).  (Doc. No. 1 at ¶ 45.)

On October 7, 2025, Diaz (through counsel) appealed the IJ's denial of bond to the BIA.  (Doc. No. 4-2.)  *See also* Doc. No. 1 at ¶ 47.  In his Notice of Appeal, Diaz set forth the same reasons

for appeal that are set forth in Mendoza's Notice of Appeal.  (Doc. No. 4-2 at PageID# 176.)  In addition, Diaz likewise argues that his appeal should be reviewed by a three-board member panel because of the need to (1) "resolve a complex, novel, unusual, or recurring issue of law or fact;" (2) "settle inconsistencies among the rulings of different immigration judges;" and (3) "establish a precedent construing the meaning of laws, regulations, or procedures."  (*Id.* at PageID# 179.)  Lastly, Diaz requests that the BIA issue an expedited briefing order because he is "detained and separated from his family after having committed no criminal offense." [5]  (*Id.* at PageID# 180.)

Diaz's bond appeal remains pending as of the date of this Order.  Diaz has remained in detention at the NEOCC since he was detained on August 13, 2025.  (Doc. No. 1 at ¶¶ 43, 46.)

### B.    Procedural History

On October 13, 2025, Petitioners filed a habeas petition with this Court pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Therein, Petitioners assert that they are being unlawfully held without bond because ICE and the IJ have improperly determined that they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), rather than to discretionary bond determinations under 8 U.S.C. § 1226(a).  (*Id.* at ¶¶ 5, 6.)  Petitioners allege that their continued detention "is plainly contrary to the statutory framework of the INA and contrary to both agency regulations and decades of consistent agency practice applying § 1226(a) to people like Petitioners."  (*Id.* at ¶ 8.)  Petitioners further allege that "[i]t violates their right to due process by depriving them of their liberty without any consideration of whether such a deprivation is warranted."  (*Id.*)  Moreover,  Petitioners claim that

---

[5] Diaz alleges that he "has no criminal record anywhere in the world" and "supports his family, including a disabled brother."  (Doc. No. 1 at ¶¶ 38, 46.)

6

"this interpretation [of § 1225(b)(2)(A)] contradicts DHS's own previous determinations that both Petitioners should be subject to § 1226(a) detention authority." (*Id*.)

Petitioners assert claims for violations of the INA (Count I) and the Due Process Clause of the United States Constitution (Count II). (*Id*. at PageID#s 21-22.) Petitioners request that this Court: (1) "[i]ssue a writ of habeas corpus requiring that Respondents release Petitioners from custody or, in the alternative, provide Petitioners with a bond hearing at which Respondents bear the burden of proof as to flight risk and danger, and/or pursuant to 8 U.S.C. § 1226(a) within 7 days;" (2) enjoin Respondents from transferring Petitioners from the jurisdiction of this District pending these proceedings; (3) "[d]eclare that 8 U.S.C. § 1226(a) -- and not 8 U.S.C. § 1225(b)(2)(A) -- is the appropriate statutory provision that governs Petitioners' detention and eligibility for bond because they are not a recent arrival 'seeking admission' to the United States, and instead were already residing in the United States when they were apprehended and charged as inadmissible for having allegedly entered the United States without inspection;" and (4) award Petitioners attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law. (*Id*. at PageID# 23.)

Petitioners argue that this Court has jurisdiction to grant the above relief pursuant to 28 U.S.C. § 2241(c)(5) (habeas corpus); 28 U.S.C. § 1331 (federal question); and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause). (*Id*. at ¶ 14.)

On October 14, 2025, this Court ordered Petitioners to immediately forward a copy of the Petition and its attachments, and the Court's briefing Order, to each of the Respondents and to file a

7

Notice on the docket confirming that they had done so.[6] (Doc. No. 6.) In addition, the Court directed the Clerk to forward a copy of the Petition and its Exhibits (Doc. Nos. 1 through 5), together with this Order, to the Office of the United States Attorney, Northern District of Ohio. (*Id.*) Lastly, pursuant to 28 U.S.C. § 2243 and for good cause shown, the Court ordered (1) Respondents to respond to the Petition by no later than October 28, 2025; and (2) Petitioner to file a Reply by no later than November 4, 2025. (*Id.*)

On October 28, 2025, Respondents filed a Motion to Dismiss the Petition pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 12.) Petitioners filed their Response on November 4, 2025. (Doc. No. 15.)

## II. Statutory Framework regarding Detention and Bond

Two statutes principally govern the detention of aliens pending removal proceedings: 8 U.S.C. § 1225 and § 1226. Section 1225(b)(2)(a)(i) provides for mandatory detention pending removal, as follows:

(2) INSPECTION OF OTHER ALIENS

(A) In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking

---

[6] The docket reflects that, on October 30 and 31, 2025, Petitioners filed a Notice of Service and a Return of Service executed upon the Office of the U.S. Attorney for the Northern District of Ohio. (Doc. Nos. 13, 14.) In their Motion to Dismiss, Respondents state that "they have not yet been served" but "in deference to the Court's October 14 Order, Respondents are filing this Response." (Doc. No. 12-1 at PageID# 220, fn 2.) Respondents indicate that, by filing their Motion, they "do not waive any defenses based on insufficiency of service." (*Id.*) In light of the emergency nature of the relief requested in the instant Petition, the Court directed Petitioners to forward a copy of the Petition and its Exhibits to Respondents and file Notice of the same on the docket. Notably, the docket reflects that the Clerk of Court also sent a copy of the Petition and its Exhibits (Doc. Nos. 1 through 5) to both the Attorney General of the United States and the Office of the United States Attorney, Northern District of Ohio. (Doc. No. 6; Remark by Clerk dated Nov. 7, 2025.) *See* Rule 4 of the Rules Governing Section 2254 Cases (providing that "the clerk must serve a copy of the petition and any order on the respondent and on the attorney general or other appropriate officer of the state involved").

admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225 applies to "applicants for admission," who are aliens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). The statute provides that "applicants for admission" must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "shall be detained for" removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A). The only exception to this mandatory detention provision is for aliens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). *See Lopez-Campos v. Raycraft*, --- F.Supp.3d ----, 2025 WL 2496379 at * 3 (E.D. Mich. Aug. 29, 2025).

Section 1226, by contrast, sets forth a discretionary detention framework. Specifically, Section 1226(a) provides, in relevant part:

(a) ARREST, DETENTION, AND RELEASE

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a). Subsection (c) of Section 1226 prohibits certain aliens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted from being released on bond, but only if the alien has also been "charged with, is arrested for, is

9

convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). Relevant here, aliens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. a bond hearing) before an IJ. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ evaluates whether there is a risk of nonappearance or danger to the community.

For many years, the Government applied the discretionary detention framework set forth in Section 1226(a) to aliens (such as Petitioners herein) who entered the United States without inspection and were subsequently placed in regular removal proceedings. *See Maldonado v. Olson*, --- F.Supp.3d ----, 2025 WL 2374411 at * 11 (D. Minn. Aug. 15, 2025) ("Historically, noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed 'arriving aliens' under § 1225(b), but were instead subject to § 1226(a).") *See also Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1259 (W.D. Wash. 2025) (noting ICE's "longstanding agency practice [of] applying Section 1226(a) to inadmissible noncitizens already residing in the country."); *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169 (BIA 2025) ("We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection.")

On May 15, 2025, however, the BIA decided *Matter of Q. Li*, 29 I&N 66, 2025 WL 1442892 (BIA May 15, 2025). In that decision, the BIA changed course, finding that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under [Section

10

1225(b)], and is ineligible for any subsequent release on bond under [Section 1226(a)]."  *Matter of Q. Li*, 29 I&N at 69.

Several months later, on July 8, 2025, the Government announced a new policy in an internal memorandum entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission."  Pursuant to this policy memo, the Government stated that it now deemed all persons who entered the United States without inspection "applicants for admission" under Section 1225(a) and, therefore, subject to mandatory detention under Section 1225(b)(2)(A).[7]  *See Maldonado*, 2025 WL 2374411 at * 11.  *See also Martinez v. Hyde*, --- F.Supp.3d ---, 2025 WL 2084238 at * 4 (D. Mass. July 24, 2025) (noting that "mandatory detention for all applicants has ... been the official policy of the [DHS]  .... since July 8, 2025, when Acting Director of [ICE], Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'").

On September 5, 2025, the BIA issued a precedential decision[8] in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169 (BIA 2025).  Therein, the BIA considered the following question: "Does the INA require that all applicants for admission, even those like the respondent who have entered without admission or inspection and have been residing in the United States for years

_____

[7] To this Court's knowledge, the "Interim Guidance Regarding Detention Authority for Applicants for Admission" policy memorandum is not available on a Government website.  However, a district court recently explained that this internal policy memo was "leaked by legal advocacy groups" and quoted it as providing as follows:  "DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities.  DHS has determined that [section 1225] of the Immigration and Nationality Act (INA), rather than [section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, --- F.Supp.3d ---, 2025 WL 2084238 at * 4 and fn 10 (D. Mass. July 24, 2025).  *See also E.V., et al. v. Raycraft, et al.*, 2025 WL 3122837 at * 9 (N.D. Ohio Nov. 7, 2025).

[8] The BIA may designate a decision as precedential.  BIA precedential decisions "serve as precedents in all proceedings involving the same issue or issues."  8 C.F.R. 1003.1(g)(2).  *See Gimenez Gonzalez v. Raycraft*, 2025 WL 3006185 at fn 3 (E.D. Mich. Oct. 27, 2025); *Chavez v. Noem*, ---- F.Supp.3d -----, 2025 WL 2730228 at * 3 (S.D. Cal. Sept. 24, 2025).

11

without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category?" *Id*. at 220.  After considering the statutory language and legislative history of Sections 1225 and 1226, the BIA answered this question in the affirmative, concluding that IJs lack authority to grant bond to aliens who are present in the United States without admission, even with respect to aliens who have been residing in the United States for a lengthy period of time following entry without inspection.[9]  *Id*. at 225, 228.

## III.  Analysis

In Count I of the Petition (entitled "Violation of the INA"), Petitioners assert that Respondents "are unlawfully detaining Petitioners without bond pursuant to the mandatory detention provision of 8 U.S.C. 1225(b)(2)."  (Doc. No. 1 at ¶ 70.)  Petitioners allege that "Section 1225(b)(2) does not apply to Petitioners, who previously entered the country and have long been residing in the United States prior to being apprehended and detained by Respondents in August 2025."  (*Id.* at ¶ 71.)  Rather, Petitioners allege that they are "plainly subject to the detention provisions of § 1226(a) and are therefore entitled to custody determinations by ICE, and if custody is continued, to custody redeterminations (i.e., bond hearings) by an IJ."  (*Id.* at ¶ 72.)  Petitioners assert that "[t]he application

---

[9] In support of its conclusion, the BIA explained: "Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer.  Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.' [citation omitted].  Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission.  Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years.  Holding otherwise would require reading the INA to conclude that Congress intended that aliens unlawfully entering the United States without inspection, particularly those who successfully evaded apprehension for more than 2 years, be rewarded with the opportunity for a bond hearing before an Immigration Judge, whereas aliens who present themselves to officers at a port of entry are ineligible for a bond hearing. This is an incongruous result which is not supported by the plain language or any reasonable interpretation of the INA." *Id.* at 228.

of § 1225(b)(2) to [them] unlawfully mandates their continued detention without bond and violates the INA."  (*Id*. at ¶ 73.)

In Count II (entitled "Violation of Due Process"), Petitioners allege that "[t]he government's detention of Petitioners without an opportunity for a custody determination or bond hearing to decide whether [they] are a flight risk or danger to others violates [their] right to due process."  (*Id*. at ¶ 77.)

In their Motion to Dismiss, Respondents request that the Court dismiss all Respondents except Respondent Raycraft (the Director of ICE's Detroit Field Office) because he is Petitioners' "immediate custodian" and, therefore, the only proper Respondent in this habeas suit.  (Doc. No. 12-1).  Respondents next argue that the Petition should be dismissed in its entirety because Petitioners have failed to exhaust their claims with the BIA.  (*Id*.)  On the merits, Respondents maintain that Petitioners' due process claim fails because "administrative immigration proceedings define aliens' due process rights, and Petitioners received all process available in those proceedings."  (*Id.* at PageID# 220.)  Lastly, Respondents assert that ICE properly detained Petitioners under Section 1225(b)(2) and, therefore, Petitioners are not entitled to a bond hearing.  (*Id*.)

In response, Petitioners argue that the Court should exercise its discretion and waive the administrative exhaustion requirement because appeal to the BIA would "both cause intolerable delay and be futile."  (Doc. No. 15 at PageID# 238.)  Petitioners next assert that, although procedural protections exist in the context of removal proceedings, "Petitioners have a liberty interest in freedom from detention that is distinct from their liberty interest in remaining in the U.S." and that "[d]eprivation of either requires due process."  (*Id*. at PageID# 242.)  Lastly, Petitioners argue, at length, that the mandatory detention provision set forth in Section 1225(b)(2)(A) only applies to the inspection of recent arrivals, whereas the discretionary framework in Section 1226(a) governs the

13

detention of individuals such as Petitioners.  (*Id*. at PageID#s 243-251.)  Petitioners request that "this Court should simply order [their] immediate release rather than [require] that another bond hearing be held before the agency."  (*Id*. at PageID# 251.)

The Court will address the parties' arguments, in turn, below.

### A.    Proper Respondent

Respondents first argue that the only proper respondent in a habeas corpus case is the detainee's "immediate custodian."  (Doc. No. 12-1 at PageID# 221.)  Respondents therefore assert that only the only proper Respondent herein is Respondent Raycraft because, as the Director of the ICE Detroit Field Office, Respondent Raycraft is the Petitioners' immediate custodian for purposes of the instant Petition.  (*Id*.)  Respondents maintain that Respondents Lyons (Acting Director of ICE), Noem (Secretary of DHS), and Bondi (the Attorney General) are not proper Respondents and should therefore be dismissed.  (*Id*.)  Petitioners fail to acknowledge, address, or otherwise respond to this argument in their Response.  (Doc. No. 15.)

Pursuant to 28 U.S.C. § 2243, a writ of habeas corpus may be issued by "the person having custody of the person detained."  In the context of a habeas corpus petition filed by an alien detained in a local detention facility contracted by ICE, the Sixth Circuit has held that "although the warden of each detention facility technically has day-to-day control over alien detainees, the [ICE District] Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners."  *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).  Therefore, the Sixth Circuit explained, "a detained alien generally must designate his immediate custodian – the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman,* 340 F.3d at 320.  *See also Woldeghergish v. Lynch*, 2025 WL 2469584 at * 1 (S.D. Ohio

14

Aug. 5, 2025), *adopted by* 2025 WL 2468042 (S.D. Ohio Aug. 27, 2025); *Hango v. McAleenan*, 2019 WL 7944352 at *2-3 (N.D. Ohio Nov. 13, 2019) (granting motions to dismiss by DHS Secretary, USAG, and County Sheriff because only the Field Director of the ICE Detroit Field Office is the proper respondent), *adopted by* 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019); *Orozco-Valenzuela v. Holder*, 2015 WL 1530631 at * 4 (N.D. Ohio April 6, 2015) (noting that the Field Office Director of the Detroit Field Office of ICE is the proper respondent for a habeas petition brought by an alien in ICE custody at detention facilities in Ohio.)

In light of the above, and in the absence of any opposition from Petitioners, the Court grants Respondents' Motion to the extent it requests the dismissal of Respondents Lyons, Noem, and Bondi.[10] Respondents Lyons, Noem, and Bondi are hereby dismissed from the instant action.

## B. Exhaustion of Administrative Remedies

The Court will next address Respondents' argument that the Petition should be dismissed without prejudice because Petitioners have failed to exhaust their administrative remedies. The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Howell v. INS*, 72 F.3d 288, 291 (2nd Cir. 1995) (quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2nd Cir. 1992)) (internal quotation marks omitted). *See also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2nd Cir. 2003). "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and

---

[10] In *Roman*, the Sixth Circuit further explained that the Attorney General may also be named as a respondent to an alien's habeas corpus petition "under extraordinary circumstances where it is necessary to preserve a person's access to habeas corpus relief." *Roman*, 340 F.3d at 325. Here, Petitioners do not argue that there are any "extraordinary circumstances" that would warrant naming the Attorney General as a Respondent herein. Thus, the Court does not reach this issue.

15

promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry,* 329 F.3d at 56. *See also Anversa v. Partners Healthcare Sys., Inc*., 835 F.3d 167, 175-176 (1st Cir. 2016) (noting that exhaustion allows "an agency the first opportunity to apply [its] expertise" and "obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress.")

The requirement of administrative exhaustion can be either statutorily or judicially imposed as a matter of prudence. *See Beharry*, 329 F.3d at 56. *See also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional); *Brito v. Garland,* 22 F.4th 240, 255 (1st Cir. 2021) ("There are two species of exhaustion: statutory and common-law."); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Brito,* 22 F.4th at 255 (quoting *Anversa*, 835 F.3d at 174). *See also Puga*, 488 F.3d at 815. In other words, "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress," but "courts have more latitude in dealing with exhaustion questions when Congress has remained silent." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

Here, the parties agree (and the Court presumes) that the requirement of administrative exhaustion in the instant matter falls within this Court's discretion. (Doc. No. 12-1 at PageID# 221; Doc. No. 15 at PageID# 237.) The Court notes that the parties fail to sufficiently identify, discuss, or direct this Court's attention to any binding authority regarding the appropriate standard for evaluating whether to require exhaustion as a prudential matter in this context. And this Court is not aware of any Sixth Circuit precedent regarding the application of prudential exhaustion in this

16

particular context.[11]  Several other Circuits, however, have examined prudential exhaustion in similar circumstances.  In the absence of any meaningful argument from counsel regarding this issue, and consistent with other recent district court decisions in this Circuit, [12] this Court will set forth and apply the Ninth Circuit's test for prudential exhaustion below.

Under the Ninth Circuit's test, courts may require prudential exhaustion when:

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga,* 488 F.3d at 815 (citations omitted) (hereinafter "the *Puga* factors").  *See also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).  If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

---

[11] The Sixth Circuit has held that, as a general rule, "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006).  *See also Little v. Hopkins,* 638 F.2d 953, 953-954 (6th Cir. 1981); *Aron v. LaManna*, 4 Fed. Appx. 232, 233 (6th Cir. 2001).  Moreover, in several recent decisions, District Judges in the Northern District of Ohio have applied principles of prudential exhaustion to dismiss § 2241 petitions without prejudice due to the petitioner's failure to appeal an IJ's denial of bond to the BIA before filing his or her habeas petition.  *See Villalta v. Greene, et al.,* --- F.Supp.3d --- 2025 WL 2472886 (N.D. Ohio Aug. 5, 2025); *Laguna Espinoza v. Director of Detroit Field Office, ICE*, 2025 WL 2878173 (N.D. Ohio Oct. 9, 2025); *Abdoulaye Ba v. Director of Detroit Field Office, ICE,* 2025 WL 2977712 (N.D. Ohio Oct. 22, 2025).

[12] Numerous district courts in this Circuit (including this Court) have applied the Ninth Circuit's test for prudential exhaustion in the immigration context, including in the context of challenges to an IJ's denial of bond.  *See, e.g., Hernandez Torrealba v. U.S. Dep't of Homeland Security*, 2025 WL 2444114 at * 8-9 (N.D. Ohio Aug. 25, 2025); *Shweika v. DHS*, 2015 WL 6541689 at * 12 (E.D. Mich. Oct. 29, 2015) (applying Ninth Circuit's prudential exhaustion framework in immigration context); *Lopez-Campos*, 2025 WL 2496379 at * 4 (same); *Mejia v. Woosley*, 2025 WL 2933852 at * 2 (W.D. Ky. Oct. 15, 2025)(same); *Sanchez Alvarez v. Noem, et al.*, 2025 WL 2942648 at * 2-3 (W.D. Mich. Oct. 17, 2025) (same).

The Court first notes that, in their respective filings, neither Petitioners nor Respondents directly address the three *Puga* factors or make any attempt to apply them to the question of whether to require exhaustion herein. The Court has nonetheless carefully considered the *Puga* factors and, for the reasons set forth below, finds that all three weigh in favor of requiring administrative exhaustion.

Beginning with the first *Puga* factor, the Court finds that the BIA's expertise makes agency consideration necessary to generate a proper record and reach a proper decision. As noted above, in their Notices of Appeal to the BIA, both Petitioners raise numerous grounds for appeal that hinge on the interpretation and application of the governing removal regime and statutes. For example, Petitioners argue that they were not "applicants for admission" but, rather, "applicants for asylum," and urge the BIA to find that "a grant of asylum is not an 'admission' to the United States." (Doc. No. 2-7 at PageID# 95; Doc. No. 4-2 at PageID# 176.) Petitioners further assert, as grounds for appeal, that "*Hurtado* is distinguishable on its facts because it involved [a] person who was granted TPS [i.e., temporary protected status], which then expired, causing him to revert to applicant for admission status, and there was no information that Hurtado had ever applied for asylum." (*Id.*) Petitioners also maintain that "in any case, [their] 'applicant for admission' status was not administratively final because [they] had not admitted or conceded any additional charges." (*Id.*)

The Court finds that principles of exhaustion weigh in favor of allowing the BIA to apply its considerable agency expertise to consider and determine these important issues. Indeed, in their Notices of Appeal, Petitioners themselves characterize the above issues as "complex, novel, unusual, or recurring" and stress the "need to settle inconsistencies among the rulings of different immigration judges" and "establish a precedent construing the meaning of laws, regulations, or procedures."

18

(Doc. No. 2-7 at PageID# 98; Doc. No. 4-2 at PageID# 179.)  While Petitioners do not expressly raise herein all of the issues that are set forth in their Notices of Appeal, the Court nonetheless finds that the BIA's consideration of Petitioners' arguments and issues on appeal, with the benefit of its significant experience and expertise with the relevant removal statutes and regulations, is necessary to generate a proper record and reach a proper decision in the instant case.

For similar reasons, the Court finds that the third *Puga* factor weighs heavily in favor of requiring exhaustion.  As noted above, the third *Puga* factor asks whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga,* 488 F.3d at 815.  It does not appear to be disputed that, if the BIA were to agree with Petitioners on even one of the six (6) arguments raised in their respective Notices of Appeal, Petitioners would be provided a new bond hearing where they could request release under Section 1226.  Requiring exhaustion under these circumstances therefore promotes the main purposes of exhaustion, i.e., it protects the BIA's authority by allowing it the opportunity to correct its own mistakes and, further, promotes judicial efficiency by resolving potential issues and potentially obviating the need for judicial review.  *See Beharry*, 329 F.3d at 56.  *See also Fazzini*, 473 F.3d at 232 (noting that the two main purposes of administrative exhaustion in the § 2241 context are to (1) "protect administrative agency authority" by allowing "an agency the opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court;" and (2) promote judicial efficiency.)

Lastly, the Court also finds that the second *Puga* factor weighs in favor of requiring administrative exhaustion.  As noted *supra,* this factor asks whether "relaxation of the [exhaustion] requirement would encourage the deliberate bypass of the administrative scheme."  *Puga,* 488 F.3d at 815.  Here, Petitioners have made clear that they believe the BIA has "predetermined the issue"

and that it will take too long to resolve their respective bond appeals.  (Doc. No. 15 at PageID#s 238-239.)  Indeed, Petitioners emphasize that habeas is their preferred strategy, asserting that habeas "demands a 'swift' remedy" in the face of allegedly illegal detention.  (*Id.* at PageID# 239.)  The Court, thus, has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court.  This is particularly problematic given the important purposes served by exhaustion, including protecting the authority of administrative agencies and limiting interference in agency affairs.  *Beharry,* 329 F.3d at 56.

Accordingly, and for all the reasons set forth above, the Court finds that the three *Puga* factors weigh in favor of requiring Petitioners to exhaust their administrative remedies.

Nonetheless, even if the three *Puga* factors set forth above weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted).  *See Beharry*, 329 F.3d at 62 (finding that exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (quotation omitted).  *See also Aron v. LaManna*, 4 Fed. Appx. 232, 233 (6th Cir. 2001) (affirming dismissal of § 2241 petition on basis of failure to exhaust administrative remedies where "nothing in the record indicates that it would have been futile for Aron

to pursue his administrative remedies or that those remedies would have been unable to afford him the relief he requests.").

Here, Petitioners argue that this Court should exercise its discretion to waive the prudential exhaustion requirement because it "would both cause intolerable delay and be futile." (Doc. No. 15 at PageID# 238.)  Regarding the issue of delay, Petitioners argue that "[a]gency data shows that, on average, the BIA took over six months to decide bond appeals in 2024." (*Id*.)  Petitioners maintain that "such a delay surely means hardship for Petitioners, who would have to remain unlawfully detained for months ... before the BIA could rule on the legality of their bond denial and on any underlying merits appeal." (*Id*.)  Regarding futility, Petitioners assert that "waiver based on futility is especially appropriate when, as here, the administrative agency has 'predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." (*Id*. at PageID#s 238-239) (citation omitted).  Petitioners also argue that waiver is appropriate given that they have raised non-frivolous constitutional questions that are purely legal in nature, which neither an immigration judge nor the BIA are positioned to properly adjudicate. (*Id*. at PageID# 239-240.)

In response, Respondents argue that neither Petitioners' likelihood of success at the administrative level, nor the fact that they are detained, "has any bearing on the exhaustion analysis." (Doc. No. 12-1 at PageID# 222.)  Respondents further assert that the risk of irreparable harm due to continued detention does not outweigh the importance of administrative exhaustion. (*Id*.)

Upon careful consideration, the Court declines to waive the administrative exhaustion requirement.  As an initial matter, the Court is not persuaded that it would be futile to require exhaustion under the circumstances presented.  As discussed above, Petitioners raise numerous grounds for appeal before the BIA that are distinct from the statutory interpretation issue that they

maintain has been "predetermined" by the BIA in *Hurtado,* i.e., whether Petitioners are subject to mandatory detention under Section 1225 or the discretionary detention framework in Section 1226. Specifically, Petitioners argue that *Hurtado* is not retroactive and, further, that it is distinguishable because it involved an individual who had been granted TPS, rather than an individual that (like Petitioners herein) have applied for asylum.  (Doc. No. 2-7 at PageID# 95; Doc. No. 4-2 at PageID# 176.)  Petitioners also raise a host of other arguments on appeal, including that (1) they were not "applicants for admission" but, rather, "applicants for asylum," and that "a grant of asylum is not an 'admission' to the United States;" and (2) their "'applicant for admission' status was not administratively final because [they] had not admitted or conceded any additional charges."  (*Id.*)

This Court cannot say that the BIA has "predetermined" each and every one of the six (6) arguments raised by Petitioners in their Notices of Appeal or that it is otherwise futile to raise them before the BIA. And, indeed, Petitioners do not make any specific argument to the contrary. Moreover, even assuming *arguendo* that the BIA is unlikely to agree with Petitioners, the Court finds that the allegedly "high probability of denial" of their bond appeals does not weigh in favor of waiving exhaustion.  Indeed, several courts (including this Court) have found that "the alleged probability that a petitioner's argument in administrative proceedings may fail is 'not tantamount to stating that it would be futile to raise it.'"  *Hernandez Torrealba v. U.S. Department of Homeland Security*, 2025 WL 2444114 at * 11 (N.D. Ohio Aug. 25, 2025) (quoting *Beharry*, 329 F.3d at 62.)  *See also Laguna Espinoza*, 2025 WL 2878173 at * 3.  Indeed, to the contrary, "'many of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance."  *Hernandez Torrealba*, 2025 WL 2444114 at * 11 (quoting *Beharry*, 329 F.3d at 62.)  Thus, even assuming that there is a

high probability that Petitioners' bond appeals to the BIA will fail, the Court finds that this is not a proper basis for waiving the exhaustion requirement.

The Court also rejects the argument that exhaustion should be waived because Petitioners raise a "non-frivolous" constitutional question. In support of this argument, Petitioners rely principally on the Sixth Circuit's decision in *Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006). In that case, Plaintiff and her husband argued that the BIA's denial of Plaintiff's spousal immigration petition violated the Due Process Clause, the INA, and the APA. *Id*. at 491. Defendants moved to dismiss on the basis of lack of subject matter exhaustion because Plaintiffs had failed to exhaust their administrative remedies, as well as for failure to state a claim. *Id.* at 493. The district court dismissed Plaintiffs' procedural due process claim on the basis of failure to exhaust, and rejected Plaintiffs' substantive due process claim for failure to state a claim. *Id.*

On appeal, the Sixth Circuit found that the district court had erred in dismissing Plaintiffs' procedural due process claim for failure to exhaust. The court explained as follows:

> [T]he Supreme Court has long held that ... the exhaustion requirement is far from absolute. *** **Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures**. *** In the immigration context, several circuits have indicated that "constitutional challenges to the INA and INS procedures and some due process claims do not require exhaustion because the BIA does not have the power to adjudicate these claims." *Sundar v. INS*, 328 F.3d 1320, 1325 (11th Cir.2003) ***

> In this case, the district court erred in holding that Plaintiffs were required to exhaust their administrative remedies before filing in federal court. It is undisputed that no statute or administrative rule required Plaintiffs to exhaust their administrative remedies. *** Thus, **whether Plaintiffs should be required to exhaust their administrative remedies is a matter of sound judicial discretion**. *** **Here, requiring Plaintiffs to exhaust their administrative remedies does not serve the interests of judicial economy**. Although the BIA undoubtedly could grant Plaintiffs some relief and possibly render Plaintiffs' procedural due process claim moot, it does not have the authority to adjudicate Plaintiffs' substantive due process claim. *** Moreover, as discussed *infra* at Section II, this Court must address the merits of one

> of Plaintiffs' APA claims. It does not serve the interests of judicial economy to dismiss Plaintiffs' claims for failure to exhaust when the federal courts must nonetheless hear other claims that are integrally related to the dismissed claims. Therefore, the district court abused its discretion in dismissing Plaintiffs' procedural due process claim for failure to exhaust administrative remedies.

*Id*. at 493-494 (internal citations omitted) (emphasis added).

The Court finds that *Bangura* does not require district courts to waive exhaustion in every instance where a non-frivolous constitutional claim is raised. Rather, in *Bangura*, the Sixth Circuit emphasized that, while district courts *may* elect to waive exhaustion where a petitioner raises a non-frivolous constitutional questions, the decision of whether to require exhaustion of administrative remedies is ultimately committed to the district court's "sound judicial discretion." *Id*. at 494. Indeed, in subsequent cases, the Sixth Circuit has continued to emphasize the discretionary nature of the waiver of exhaustion, expressly noting that while "exhaustion need not be required for non-frivolous questions," "this does not mean that all non-frivolous constitutional challenges are free from exhaustion requirements." *Shearson v. Holder*, 725 F.3d 588, 594-595 (6th Cir. 2013).

Here, the Court finds that waiver is not required. While Petitioners raise a due process challenge to the IJ's denial of bond, this claim (like Petitioners' INA claim) is predicated on the IJ's allegedly incorrect interpretation and application of Sections 1225 and 1226. *See* Doc. No. 1 at PageID#22. This Court agrees with another District Judge in this District that, under these circumstances, "any determination regarding detention here turns on an interpretation and application of the governing removal regime" and "in the first instance, such review should proceed before the [BIA] to 'apply its experience and expertise without judicial interference.'" *Laguna Espinoza*, 2025 WL 2878173 at * 2 (internal quotation omitted.) *See Ba*, 2025 WL 2977712 at * 2 (same); *Villalta*, 2025 WL 2472886 at *2 (same). *See also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir.

2003) (acknowledging that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"). Accordingly, and for all the reasons set forth above, the Court declines to waive the exhaustion requirement based on the alleged futility of Petitioners' appeal to the BIA.

The Court also declines to waive the exhaustion requirement based on Petitioners' argument that they are suffering, and will continue to suffer, irreparable harm from their continued allegedly unlawful detention. (Doc. No. 15 at PageID# 238.) Petitioners allege that Mendoza has been detained since August 6, 2025 and Diaz has been detained since August 13, 2025 -- a total of 98 and 91 days, respectively, as of the date of this Order. (Doc. No. 1 at ¶¶ 20, 21.) The IJ issued his written bond decisions on September 25, 2025, and Petitioners filed their respective Notices of Appeal on October 7, 2025. (*Id*.) *See also* Doc. No. 2-7 at PageID# 95; Doc. No. 4-2 at PageID# 176. It is not clear when the BIA will address their bond appeals, but Petitioners argue that, on average, the BIA "took over six months to decide bond appeals in 2024." (Doc. No. 15 at PageID# 238.) Thus, Petitioners argue that it is possible that the BIA may not rule on their bond appeals until April 2026 (i.e., six months after the filing of their October 7, 2025 Notices of Appeal).

The Court recognizes and appreciates Petitioners' concerns. However, it is speculative to make any assumptions regarding when the BIA will resolve Petitioners' bond appeals. There is insufficient information before the Court at this time to demonstrate that exhaustion of Petitioners' administrative remedies will be unduly prolonged (and, indeed, it is possible that the BIA rulings may be imminent.) Moreover, even assuming that there may be a period of additional delay associated

25

with awaiting rulings from the BIA, the Court is not persuaded that the risk of irreparable harm to Petitioners outweighs the importance of requiring exhaustion under the circumstances presented.[13]

Accordingly, and for all of the above reasons, the Court finds that Petitioners must exhaust their administrative remedies before obtaining federal district court review of the claims set forth in the Petition. Thus, and because Petitioners have failed to demonstrate grounds for excusing exhaustion, the Court dismisses the Petition without prejudice.

## IV. Conclusion

For all the reasons set forth above, Respondents' Motion to Dismiss (Doc. No. 12) is granted as follows. Respondents Lyons, Noem, and Bondi are hereby dismissed, and the Petition (Doc. No. 1) is DISMISSED WITHOUT PREJUDICE.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*,

---

[13] The Court notes that, in every habeas case under both 28 U.S.C. §§ 2241 and 2254, habeas petitioners argue that they are being detained or imprisoned in violation of their constitutional rights. Nonetheless, the Sixth Circuit has made clear that as a general rule, "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition." *Fazzini*, 473 F.3d at 231 (in context of § 2241 petition). *See also Aron,* 4 Fed. Appx. at 233 (§ 2241 petition); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (§ 2254 petition); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (§ 2254 petition).

542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Because of an absence of controlling precedent in this Circuit on the proper procedure on the facts and circumstances presented, the Court acknowledges that reasonable jurists may disagree with the application of prudential exhaustion herein.  For these reasons, the Court GRANTS a Certificate of Appealability on Counts One and Two of the Petition.

**IT IS SO ORDERED.**


Dated:  November 12, 2025                    *s/Pamela A. Barker*_____
                                             PAMELA A. BARKER
                                             UNITED STATES DISTRICT JUDGE