IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Jose Rodriguez Mendoza, et al.,** | Case No. 4:25cv2183 |
| Petitioners, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **Kevin Raycraft, Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement, et al.,** | MEMORANDUM OPINION & ORDER |
| Respondents. | |

Currently pending is the Motion of Petitioners Jose Rodriguez Mendoza ("Mendoza") and Guillermo Acevedo Diaz ("Diaz") (hereinafter referred to collectively as "Petitioners") to Alter, Amend, or Vacate this Court's November 12, 2025 Memorandum Opinion & Order dismissing their Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 without prejudice. (Doc. No. 20.) Respondent Kevin Raycraft, Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement ("ICE") (Respondent")[1] filed a Brief in Opposition on December 18, 2025 and Supplemental Opposition on December 22, 2025. (Doc. Nos. 21, 23-2.) Petitioners filed a Response on January 7, 2026. (Doc. No. 25.)

---

[1] Respondent's Brief in Opposition and Supplement both indicate that they are filed by Respondents Raycraft, Todd Lyons (Acting Director of ICE), Kristi Noem (Secretary of the Department of Homeland Security), and Pamela Bondi (Attorney General of the United States. (Doc. No. 21 at PageID# 325; Doc. No. 23-2 at PageID# 343.) However, in its November 12, 2025 Memorandum Opinion & Order, this Court found that Respondent Raycraft was the only proper Respondent, and dismissed Respondents Lyons, Noem, and Bondi from this action. (Doc. No. 18 at PageID#s 269-270.) Thus, this Court construes the Brief in Opposition (Doc. No. 21) and Supplement (Doc. No. 23-2) as being filed by Respondent Raycraft only.

For the following reasons, Petitioners' Motion to Alter, Amend, or Vacate Judgment (Doc. No. 20) is DENIED.

## I. Relevant Background[2]

### A. The Petition

On October 13, 2025, Petitioners filed a habeas petition with this Court pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Therein, Petitioners asserted that they are being unlawfully held without bond because ICE and the IJ have improperly determined that they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), rather than to discretionary bond determinations under 8 U.S.C. § 1226(a). (*Id.* at ¶¶ 5, 6.) Petitioners alleged that their continued detention "is plainly contrary to the statutory framework of the INA and contrary to both agency regulations and decades of consistent agency practice applying § 1226(a) to people like Petitioners." (*Id.* at ¶ 8.) Petitioners further alleged that their continued detention "violates their right to due process by depriving them of their liberty without any consideration of whether such a deprivation is warranted." (*Id.*)

Petitioners asserted claims for violations of the INA (Count I) and the Due Process Clause of the United States Constitution (Count II). (*Id.* at PageID#s 21-22.) Petitioners requested that this Court: (1) "[i]ssue a writ of habeas corpus requiring that Respondents release Petitioners from custody or, in the alternative, provide Petitioners with a bond hearing at which Respondents bear the burden of proof as to flight risk and danger, and/or pursuant to 8 U.S.C. § 1226(a) within 7 days;" (2) enjoin Respondents from transferring Petitioners from the jurisdiction of this District pending these proceedings; (3) "[d]eclare that 8 U.S.C. § 1226(a) -- and not 8 U.S.C. § 1225(b)(2)(A) -- is the

---

[2] The Court set forth the factual allegations and full procedural history in its November 12, 2025 Opinion (Doc. No. 18) and will not repeat that information herein. Familiarity with this Court's previous Opinion is presumed.

appropriate statutory provision that governs Petitioners' detention and eligibility for bond because they are not a recent arrival 'seeking admission' to the United States, and instead were already residing in the United States when they were apprehended and charged as inadmissible for having allegedly entered the United States without inspection;" and (4) award Petitioners attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law. (*Id*. at PageID# 23.)

On October 14, 2025, the Court issued an expedited briefing Order. (Doc. No. 6.) Pursuant to that Order, on October 28, 2025, Respondents Raycraft, Lyons, Noem, and Bondi filed a Motion to Dismiss the Petition pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 12.) Petitioners filed their Response on November 4, 2025. (Doc. No. 15.)

B.  **The Court's November 12, 2025 Opinion and the Motion to Alter or Amend**

On November 12, 2025, this Court issued a Memorandum Opinion & Order granting Respondents' Motion to Dismiss, as follows. (Doc. No. 18.) First, the Court determined that, as the person having immediate custody over Petitioners, Respondent Raycraft was the only proper respondent. (*Id*. at PageID#s 269-270.) Thus, the Court granted Respondents' Motion to the extent it requested dismissal of Respondents Lyons, Noem, and Bondi. (*Id*.) The Court next found that the three factors set forth in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) weighed in favor of requiring Petitioners to exhaust their administrative remedies. (*Id*. at PageID#s 270-275.) After a lengthy analysis, the Court then declined to waive the administrative exhaustion requirement, rejecting Petitioners' argument that requiring them to exhaust their remedies would "both cause intolerable delay and be futile." (*Id*. at PageID#276-281.) The Court, therefore, dismissed the Petition without prejudice. (*Id.* at PageID# 281.)

On December 9, 2025, Petitioners filed the instant Motion to Alter, Amend, or Vacate Judgment. (Doc. No. 20.) Petitioners argue that reconsideration is warranted based on a series of decisions issued by the United States District Court for the Central District of California in *Bautista v. Santacruz*, Case No. 5:25CV1873 (C.D. Cal.) (Sykes, J.). Respondent filed a Brief in Opposition on December 18, 2025, followed by a Supplemental Opposition on December 22, 2025. (Doc. Nos. 21, 23.) Petitioner filed a Reply on January 7, 2026. (Doc. No. 25.)

Because the *Bautista* decisions are central to Petitioners' Motion, the Court will discuss those decisions in some detail, below.

### C.   The *Bautista* Decisions

In June 2025, ICE detained Lazaro Maldonado Bautista and numerous other aliens during an operation in Los Angeles. *See Bautista v. Santacruz*, 2025 WL 3713987 at * 1 (C.D. Cal. Dec. 18, 2025). In July 2025, Bautista and his co-petitioners filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in the United States District Court for the Central District of California. Therein, Petitioners alleged that a recent change in DHS policy[3] deeming all persons who entered the United States without inspection to be subject to mandatory detention under § 1225(b)(2)(A), violated the INA, the Fifth Amendment Right to Due Process, and the Administrative Procedure Act ("APA"). *Id*. at * 2. That same day, petitioners filed an Application for a Temporary Restraining Order ("TRO"), in which they requested that the district court enjoin respondents from detaining them unless they were provided with individualized bond hearings before an Immigration Judge ("IJ"). *Id.*

---

[3] As this Court explained in its November 12, 2025 Order: "[O]n July 8, 2025, the Government announced a new policy in an internal memorandum entitled 'Interim Guidance Regarding Detention Authority for Applicants for Admission.'" Pursuant to this policy memo, the Government stated that it now deemed all persons who entered the United States without inspection 'applicants for admission' under Section 1225(a) and, therefore, subject to mandatory detention under Section 1225(b)(2)(A)." (Doc. No. 18 at PageID# 266.)

4

In addition, petitioners sought an order prohibiting respondents from relocating petitioners outside the Central District of California pending final resolution of the litigation. *Id*. The district court granted the TRO on July 28, 2025. *Id*.

Shortly thereafter, petitioners "amended their complaint to include class allegations and requests for declaratory relief as to the legality of Respondents' policies relating to denying bond hearings." *Id*. In August 2025, petitioners moved for partial summary judgment, seeking to declare the new DHS policy as unlawful. *Id*. On that same date, petitioners filed a class certification motion, seeking declaratory relief and vacatur against respondents' policies on behalf of a proposed so-called "Bond Eligible Class." *Id*.

On November 20, 2025, the district court issued an Order granting petitioner's motion for partial summary judgment. *See Bautista v. Santacruz*, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) ("*Bautista I*"). After determining that it had jurisdiction to do so, the district court analyzed the mandatory and discretionary detention provisions at issue (i.e., 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(a), respectively) and concluded that the plain text of the INA required respondents to provide petitioners individualized bond hearings pursuant to the discretionary detention provision set forth in § 1226(a). *Id*. at *11.

Five days later, on November 25, 2025, the district court issued an Order granting petitioners' motion for class certification. *See Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) ("*Bautista II*"). The district court analyzed the requirements set forth in Fed. Rules Civ. P. 23(a) and 23(b)(2) and proceeded to certify a class "as to petitioners' claims that the DHS policy violates the INA and Due Process." *Id*. at * 9. The district court defined the certified class (i.e., "the Bond Eligible Class") as follows: "All noncitizens in the United States without lawful status who (1)

5

have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id*. Lastly, the district court "extend[ed] the same declaratory relief granted to Petitioners [as set forth in *Bautista I*] to the Bond Eligible Class as a whole." *Id*. The district court did not, however, enter final judgment at that time.

On December 4, 2025, petitioners filed an "Application for Clarification and Reconsideration," ("the Application") in which they asserted that respondents had "persisted in denying class members bond hearings" and requested the entry of final judgment. *See Bautista v. Santacruz*, 2025 WL 3713987 at * 3 (C.D. Cal. Dec.18, 2025) ("*Bautista III*"). Respondents opposed the Application.

On December 18, 2025, the district court issued an "Amended Order consolidating the Court's Orders on Motion for Partial Summary Judgment, Class Certification, and Application for Reconsideration or Clarification." *See Bautista III*. Of particular relevance herein, the district court addressed respondents' argument that petitioners' class claims could only be properly brought through habeas, rather than under the APA. *Id*. at * 14. In rejecting this argument, the district court noted (in relevant part) as follows:

> The Court ... notes Respondents' argument that habeas is an adequate remedy seems to misunderstand Petitioners' requested clarification and relief to sound only in habeas. To the extent Respondents take issue with Petitioners' habeas claims, the available relief is limited to the named Petitioners who were detained and denied individual bond hearings in violation of the INA.
>
> **If Petitioners had requested classwide declaratory habeas relief, such relief could extend only to members of the Bond Eligible Class residing within this judicial district.** *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (concluding habeas jurisdiction lies "in only one district: the district of confinement"). **Therefore, all**

6

> **other members of the Bond Eligible Class would not be afforded relief under habeas**. Indeed, that was the nature of this action anyway. The Amended Class Complaint and briefings from Petitioners confirm that habeas relief was sought only as to the named Petitioners. **Nowhere in the Amended Class Complaint or Motion for Partial Summary Judgment do Petitioners seek habeas relief on a nationwide level**.

*Id*. at * 14 (emphasis added) (internal citations to the record omitted). The district court again granted petitioners' motion for partial summary judgment, finding the new DHS policy to be unlawful and vacating that policy under the APA. *Id.* at * 7-12, 15-22.

The district court next turned to the petitioners' class certification motion, and again granted it. *Id.* at * 23-28. In addition, the district court extended "the same declaratory relief and vacatur granted to Petitioners to the Bond Eligible Class as a whole." *Id.* at * 29. Notably, however, the district court explained:

> **This is not, however, an order by the Court to require Respondents to provide habeas relief for all class members across the nation**. Rather, it extends the declaration of the unlawful nature of the DHS Policy to the APA claim, which would thus require the Court to "set aside" that policy. Vacatur, then, would render the very DHS Policy upon which immigration judges ("IJs") and the Executive Office for Immigration Review have cited as grounds for its denial of bond hearings a nullity.
>
> ***
>
> Respondents argue Petitioners ultimately request "habeas relief," which is governed by the immediate custodian rule as well as jurisdictional rules that require a habeas petition be filed within the district of confinement. Respondents are correct about both rules, but they fail to acknowledge that the certified class raises more than just habeas relief.
>
> Although Petitioners requested habeas relief for the Named Plaintiffs, **Petitioners' requested classwide relief does not include ordering nationwide habeas relief.** *** The Court readily admits that federal courts are of limited jurisdiction. **This Court's jurisdiction to grant habeas relief is limited to those within the judicial district**. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (concluding habeas jurisdiction lies "in only one district: the district of confinement"). **In certifying the Bond Eligible Class, the Court only extends its declaratory judgment regarding the illegality of the DHS Policy for purposes of the APA claim. The Court cannot order**

> **nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside this judicial district.**

*Id*. at * 29-30 (emphasis added) (internal citations to the record omitted). Lastly, the district court entered final judgment as to Counts I, II, and III of the Amended Class Complaint. *Id*. at * 32.

Petitioners immediately appealed to the Ninth Circuit. That appeal remains pending as of the date of this Order. Meanwhile, on January 9, 2026, the parties filed a Joint Status Report, in which petitioners "expressed concerns as to whether Respondents had adequately provided relief in accordance with the final judgment." *Bautista v. Santacruz*, 2026 WL 468284 at * 4 (C.D. Cal. Feb. 18, 2026) ("*Bautista IV*") Specifically, "Plaintiff Petitioners observed that IJs continued to follow the BIA's legal interpretation in *Matter of Yajure Hurtado*,[4] which endorsed a position identical to the DHS Policy." *Id*. Respondents disagreed that "any further relief [was] required or warranted regarding the declaratory judgment" that was part of the final judgment. *Id.* Shortly after the submission of the Joint Status Report, the district court "was made aware of ... an email containing nationwide guidance from Chief Immigration Judge Teresa L. Riley that questioned this Court's final judgment." *Id*. The parties submitted supplemental briefing, and "Plaintiff Petitioners" filed a motion to enforce judgment.[5]

---

[4] In *Matter of Yajure Hurtado*, 29 I&N 216, 2025 WL 2674169 (BIA 2025), the BIA held (in a precedential decision) that "[b]ased on the plain language of section 235(b)(2)(A) of the Immigration & Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."

[5] In their supplemental brief, respondents confirmed that DHS "is no longer relying on the [DHS Policy]," but asserted that "DHS is not the BIA and does not set policy for immigration judges." *Id*. Respondents further suggested that they had fully complied with the Court's final judgment because "the Court has not vacated *Matter of Yajure Hurtado*." *Id*. Respondents further noted "[e]ven if [*Matter of Yajure Hurtado*] were vacated, immigration courts would follow circuit precedent and the statutory text under their own interpretive authority." *Id*. Finally, because the Court issued a declaratory judgment, respondents suggested "the practical implication ... is, at most, limited to its preclusive effect in habeas litigation filed by [Bond Eligible Class members]." *Id*.

8

On February 18, 2026, the district court issued an Opinion granting "Plaintiff Petitioners'" motion to enforce judgment. *See Bautista IV* at * 7. The district court first determined that it had jurisdiction to consider the motion to enforce despite the pending appeal to the Ninth Circuit. *Id*. at * 7-9. Based on IJ Riley's email and the continued filing of large numbers of habeas cases both in the Central District of California and across the nation, the district court found that respondents "continue to endorse an executive interpretation of law that is contrary to the final judgment's declaration of law." *Id*. at * 9. Thus, the district court concluded that "further relief is proper to fulfill this Court's constitutional duties." *Id*. Specifically, the district court vacated the BIA's decision in *Matter of Yujare Hurtado*, reasoning that "*Yajure Hurtado* is functionally equivalent to the DHS Interim Policy" that the district court had previously found unlawful. *Id*. at * 10. Lastly, the district court ordered classwide notice of its final judgment in *Bautista III*. *Id*. at * 12-13.[6]

## II.   Legal Standard

A court may grant a motion to amend or alter judgment under Fed. R. Civ. P. 59(e) if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Brumley v. United Parcel Service, Inc*., 909 F.3d 834, 841 (6th Cir. 2018); *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial

---

[6] On February 20, 2026, respondents appealed *Bautista IV* to the Ninth Circuit Court of Appeals. *See Bautista IV*, C.D. Cal. Docket Sheet. In addition, respondents filed an *Ex Parte* Application to Stay *Bautista IV* pending appeal, which petitioners opposed on February 23, 2026. *Id*.

9

consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio,* 930 F. Supp. 1182, 1184 (N.D. Ohio 1996).[7]  *See also Brumley*, 909 F.3d at 841.

Motions to alter or amend under Rule 59 are extraordinary and should be sparingly granted. *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd*., 2007 WL 1362457 at * 2 (N.D. Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc*., 904 F. Supp. 644, 669 (N.D. Ohio 1995).

**III.     Analysis**

Petitioners filed the instant Motion to Alter, Amend or Vacate Judgment on December 9, 2025, i.e., after the decisions in *Bautista I* and *II,* but before the decisions in *Bautista III* and *IV*.  In their Motion, Petitioners seek reconsideration of this Court's November 12, 2025 Opinion "based on an intervening change in controlling law."  (Doc. No. 20 at PageID# 285.)  Petitioners argue that they are members of the Bond Eligible Class that was certified in *Bautista II*.  (*Id*. at PageID#s 285-286.) Petitioners note that the *Bautista* court concluded that aliens who entered without inspection but were not apprehended upon arrival are detained under § 1226(a) and therefore entitled to bond hearings. (*Id*.)  Petitioners emphasize that the *Bautista* court "extended this declaratory relief to all members of the Bond Eligible Class -- including Petitioners [herein]" in *Bautista II*.  (*Id*. at PageID#s 286-287.)

Petitioners assert that this intervening legal development "fundamentally alters" the Court's reasoning behind its order requiring Petitioners to exhaust their administrative remedies.  (*Id.* at PageID#s 287-289.)  Specifically, Petitioners maintain that "[t]he legal question that this Court found

---

[7] *See also Gascho v. Global Fitness Holdings, LLC,* 918 F.Supp.2d 708, 715 (S.D. Ohio Jan. 16, 2013) ("A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion."); 11 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 2810.1 (2d ed. 1995) (motions to alter or amend judgment cannot be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.").

required BIA expertise and consideration has been definitively resolved in Petitioners' favor by a federal district court with nationwide effect" and, therefore, "[a]dministrative exhaustion no longer serves the purposes identified by this Court." (*Id*.) In particular, Petitioners assert that (1) "[t]he BIA cannot 'correct its own mistakes' when a federal court has already issued binding declaratory relief establishing the correct legal framework;" and (2) exhaustion does not "preclude the need for judicial review" since "Petitioners are entitled to immediate relief based on existing judicial review in *Bautista*." (*Id*.) Petitioners further argue that "the *Bautista* orders establish that Petitioners' administrative appeals are futile and that their continued detention without bond hearings violates both the INA and their due process rights." (*Id*. at PageID# 288.)

Lastly, Petitioners ask the Court to reconsider its November 12, 2025 Opinion to prevent manifest injustice. (*Id*. at PageID#s 289-290.) Petitioners note that the BIA still has not taken any action on their Notices of Appeal (which were filed on October 7, 2025) and that "cases before the BIA often languish for years." (*Id*.) Petitioners argue "this Court's Order requires Petitioners to remain detained for months or even years while pursuing appeals, even though they are now members of a certified nationwide class with declaratory relief establishing their right to bond hearings." (*Id*.) In sum, Petitioners maintain that "[r]equiring them to remain in detention while pursuing futile BIA appeals—when they are entitled to immediate bond hearings as class members—works a manifest injustice." (*Id.*)

Respondent filed his Brief in Opposition on December 18, 2025. (Doc. No. 21.) Therein, Respondent argues that "*Bautista* does not have preclusive effect here" because it was not a class-wide final judgment. (*Id*. at PageID#s 326-328.) Respondent also argues that Petitioners should still be required to exhaust their administrative remedies because the analysis of whether Petitioners are

11

subject to § 1225(b)(2) or § 1226(a) is intertwined with "the statutory and regulatory immigration regime." (*Id*.)

Later that same day, however, the California District Court issued a final judgment in *Bautista III*. Thus, Respondent requested (and was granted) leave to file a Supplemental Opposition Brief. (Doc. Nos. 23.) Therein, Respondent argues that *Bautista III* provides "core habeas relief" and, therefore, has no preclusive effect over immediate custodians that are located outside of the Central District of California. (Doc. No. 23-2.) Relatedly, Respondent asserts that "class-wide declaratory relief is inappropriate in the habeas context." (*Id*. at PageID# 344.) Respondent further asserts that, even if *Bautista III* did have preclusive effect in this District, this Court should nonetheless decide not to afford *Bautista III* preclusive effect because that decision is currently on appeal to the Ninth Circuit. (*Id*. at PageID# 346-347.) Lastly, Respondent argues that this Court should not apply issue preclusion because (1) Petitioners were not named parties to the *Bautista* case; (2) doing so would "allow the *Bautista* court's decision to freeze the law for all district courts nationwide and stymie[] development of the law;" and (3) "it is doubtful that issue preclusion is ever appropriate in the habeas context." (*Id*. at PageID# 348-349.)

In their Reply, Petitioners argue that the relief sought in *Bautista* was not "core habeas relief" because "the *Bautista* Plaintiffs brought their class claims under the APA, and not in habeas." (Doc. No. 25 at PageID# 383.) Petitioners emphasize that Respondents do not dispute that Petitioners are members of the Bond Eligible Class or that "the federal agency that employs Respondent Raycraft" is a defendant in *Bautista*. (*Id*. at PageID# 386.) Thus, Petitioners assert that "the judgment in *Bautista* is applicable to both Petitioners and Respondent in this case, and this Court must recognize its binding authority over this matter and order Petitioners released." (*Id*.) Petitioners next argue that

12

the pending appeal in *Bautista* does not affect the finality of *Bautista III* because the Ninth Circuit has not stayed, vacated, or reversed that decision. (*Id.*) Lastly, Petitioners assert that Respondent's arguments against applying issue preclusion in this case are without merit. (*Id.* at PageID#s 387-390.)

For the following reasons, the Court finds that the California district court's decisions in *Bautista* do not constitute "controlling law" for purposes of the instant habeas action. As an initial matter, the Court expressly rejects the notion that the *Bautista* court ordered habeas relief for class members residing outside of the Central District of California. The *Bautista* court itself acknowledged that it did not have the authority to do so, noting that "this Court's jurisdiction to grant habeas relief is limited to those [petitioners] within the" Central District of California. *Bautista III* at * 30. Indeed, the *Bautista* court went so far as to explain that "[t]o the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be *ultra vires*; there is no habeas jurisdiction to do so." *Id.* *See also id.* at * 29 (stating that "[t]his is not ...an order by the Court to require Respondents to provide habeas relief for all class members across the nation.")

Here, it is undisputed that Petitioners are currently detained at the Northeast Ohio Correctional Center, which is located within the judicial district of the Northern District of Ohio -- not the Central District of California. Accordingly, to the extent Petitioners suggest that the *Bautista* court had the authority or jurisdiction to order that they be granted habeas relief in this action, this argument is without merit and rejected. *See, e.g., Ramirez v. Holt*, 2026 WL 226964 at * 7 (E.D. Ky. Jan. 28, 2026) (citing the above language from *Bautista* and noting that the *Bautista* court "plainly did not order any kind of relief that would bind this Court, which means that its opinions in *Maldonado*

13

*Bautista* can have no more than persuasive authority."); *Tecum Pastor v. DHS*, 2025 WL 3746495 at * 5 (N.D. Ohio Dec. 24, 2025) (expressing skepticism that the *Bautista* court could "issue a nationwide class of habeas petitioners" where "the warden having custody over Mr. Tecum Pastor was not before the Central District of California.")[8]

Petitioners' primary argument appears to be that they are entitled to habeas relief in this action because the *Bautista* court granted declaratory relief and vacated the new DHS policy under the APA, and properly extended that relief to all members of the Bond Eligible Class. The Court finds this argument to be without merit and agrees with the reasoning of district courts both within and outside of this Circuit that have raised serious reservations about the purportedly "universal nature of the relief ordered" by the *Bautista* court. As explained (in relevant part) by the district court in *Calderon Lopez v. Lyons*, 2025 WL 3683918 at * 12-13 (N.D. Tex. Dec. 19, 2025):

> [One of the implications from *Bautista*].... runs as follows: the petitioners, consistent with the immediate-custodian rule, will continue to sue in the district of their confinement, but the nationwide class requires that the local federal district judge accept the Central District's declarations of law as binding. Then, having done so, the local district judge must order the class member relief in the form of an individualized bond hearing. In other words, the petitioner asserts that this Court submit to a type of "Simon Says" arrangement with the Central District.
>
> *** [This] would require courts to neuter the Supreme Court's holding in *Aleman Gonzalez* that the INA prohibits class-wide injunctive relief. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554–55 (2022). Petitioners would use the Bond Eligible Class as a vehicle to order district courts to grant as individual relief that which is barred by the INA and Supreme Court precedent. The INA would only narrowly stop technical intrusions into federal immigration policy and flood district courts with the

---

[8] *See also R.P. v. Warden, Stewart Detention Center*, 2026 WL 147697 at fn 1 (M.D. Ga. Jan. 20, 2026) ("To the extent that the parties make arguments based on a belief that Petitioner is a member of the 'Bond Eligible Class' certified in *Maldonado Bautista v. Santacruz*, [], 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), any membership in that class has no effect on the Court's decision for several reasons. First, only the named petitioners sought habeas relief in *Maldonado Bautista*. Second, the named petitioners did not seek nationwide habeas relief. Third, in granting declaratory relief, the California District Court correctly noted that habeas relief could only be afforded to class members who were located within the boundaries of the Central District of California.")

> binding orders of whichever judge certifies a class and first asserts authority over petitioners in the other ninety-three [judicial] districts.

*Calderon Lopez v. Lyons*, 2025 WL 3683918 at *12–13 (N.D. Tex. Dec. 19, 2025). District courts within the Sixth Circuit have likewise agreed with the concerns raised in *Calderon Lopez*. *See e.g., Gonzalez v. Ladwig*, 2026 WL 413602 at * 12 (W.D. Tenn. Feb. 13, 2026) (quoting the above passage from *Calderon Lopez* with approval and finding that "the only acceptable conclusion is that the *Maldonado Bautista* relief, to the extent it purported to be universal, was *ultra vires*. Thus this Court is not precluded from arriving at contrary conclusions of law and is not required to grant the relief that the *Maldonado Bautista* court believed appropriate.")

Thus, and for the reasons set forth above, this Court finds that the *Bautista* decisions are not "controlling law" for purposes of the instant habeas action and reconsideration is not warranted on the basis of the purportedly class wide relief granted therein. Rather, if Petitioners believe that they are entitled to bond hearings by virtue of being members of the Bond Eligible Class in *Bautista*, their remedy lies before the Central District of California – not this Court. *See, e.g, Coronado v. Sec'y, Dep't of Homeland Sec., et al.*, 2025 WL 3628229 at *13 (S.D. Ohio Dec. 15, 2025) ("If another federal district court in another district has ordered a party (e.g., ICE) to do something, and the party is failing to follow that order, the relief for that failure primarily lies before the court that entered the order in the first instance."); *Bartolon v. Bondi*, 2025 WL 3674604 at * 9-10 (S.D. Ohio Dec. 18, 2025) (same); *Tecum Pastor*, 2025 WL 3746495 at * 5 (concluding that "the Court is not bound by the Central District of California's ruling" and that, if petitioner believes he is entitled to a bond hearing as a member of the Bond Eligible Class, "then his remedy lies in the Central District of California").

Lastly, the Court is not persuaded that reconsideration is warranted to prevent a manifest injustice. As set forth above, if Petitioners believe that they are entitled to a bond hearing as a member of the Bond Eligible Class in *Bautista III,* they may seek relief in that court. Reconsideration of this Court's November 12, 2025 Memorandum Opinion & Order is not warranted.

## IV.     Conclusion

For all the reasons set forth above, Petitioners' Motion to Alter, Amend, or Vacate Judgment (Doc. No. 20) is DENIED.

**IT IS SO ORDERED.**


Dated:  February 24, 2026                                      *s/Pamela A. Barker*
                                                               PAMELA A. BARKER
                                                               UNITED STATES DISTRICT JUDGE